IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Courtney Dimidik, | |
| *On behalf of herself and those similarly situated*, | Case No. |
| Plaintiff, | Judge |
| | Magistrate Judge |
| v. | |
| Hallrich Incorporated, North Coast Pizza, Inc., A.E. Szambecki A. Scott Ritchie, and Scott C. Arbuthnot, | Jury Demand Endorsed Hereon |
| Defendants. | |

CLASS AND COLLECTIVE ACTION COMPLAINT

1.     Courtney Dimidik, on behalf of herself and all similarly-situated individuals, brings this action against Defendants Hallrich Incorporated, North Coast Pizza, Inc., A.E. Szambecki, A. Scott Ritchie, and Scott C. Arbuthnot ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), the Ohio Constitution, Article II, Section 34a ("Section 34a"), O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), and O.R.C. § 2307.60. Plaintiff also asserts a claim under Ohio law for unjust enrichment.

2.     Defendants operate approximately 132 Pizza Hut Pizza franchises in Ohio, Pennsylvania, West Virginia, and Indiana (the "Hallrich stores").

23

3. Defendants repeatedly and willfully violated the Fair Labor Standards Act, the Ohio Constitution, and the Ohio Prompt Pay Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

4. Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA, Section 34a, and the Prompt Pay Act.

5. All delivery drivers at the Hallrich stores, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for expenses.

6. Plaintiff brings this action on behalf of herself and similarly situated current and former delivery drivers nationwide who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA by Defendants.

7. Plaintiff also brings this action on behalf of herself and similarly situated current and former delivery drivers in Ohio, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of Section 34a, the Prompt Pay Act, O.R.C. § 2307.60, and for unjust enrichment.

## Jurisdiction and Venue

8. Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

9. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Ohio law claims.

10. Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## Parties

### Plaintiff

### Courtney Dimidik

11.     Plaintiff Courtney Dimidik is a resident of Ohio and, at all times material herein, Plaintiff worked within the boundaries of Southern District of Ohio.

12.     Plaintiff is an "employee" of all of the Defendant as defined in the FLSA and Section 34a.

13.     Plaintiff has given written consent to join this action.

### Defendants

14.     Defendants' Hallrich stores are part of a single integrated enterprise.

15.     Upon information and belief, Defendants' Hallrich stores are operated pursuant to a franchise agreement between Defendants and Pizza Hut.

16.     Defendants A.E. Szambecki and A. Scott Ritchie, according to the Hallrich website, the innercrust.com, first began operating Pizza Hut franchises together in 1968.

17.     According to the Hallrich website, the innercrust.com, in 1968, William G. Halls and Defendant A. Scott Ritchie purchased a Pizza Hut franchise with plans to open in Austintown, Ohio.

18.     In 1968, William G. Halls and Defendant A. Scott Ritchie offered Defendant A.E. Szambecki the opportunity to own and operate part of the Pizza Hut franchise that Halls and Ritchie planned to open in Austintown, Ohio.

19.     Defendant A.E. Szambecki accepted William G. Halls and Defendant A. Scott Ritchie's offer and since 1968 has owned and operated Pizza Hut Franchises with Defendant, A. Scott Ritchie, in Ohio and in other states.

20.     The opening of the Austintown, Ohio, Pizza Hut franchise in 1968 marked the

23

beginning of the franchise operation that became Hallrich Incorporated.

21. Defendant A.E. Szambecki and Defendant A. Scott Ritchie are the original incorporators on Hallrich Incorporated's articles of incorporation.

22. Defendant Scott C. Arbuthnot was promoted to President of Hallrich in 2017 and was later appointed as CEO of Hallrich in 2020.

23. Hallrich Incorporated, now operates approximately 132 Pizza Hut restaurants in 4 states.

24. The Hallrich website, innercrust.com, lists all 132 Hallrich stores.

25. Each of the Defendants had substantial control over Plaintiff and similarly situated delivery drivers' working conditions, and over the unlawful policies and practices alleged herein.

26. At all relevant times, the Hallrich stores shared common management and were centrally controlled and/or owned by Defendants.

27. At all relevant times, all Defendants maintained control over labor relations at the Hallrich stores.

28. During all relevant times, Defendants permitted employees to transfer or be shared by and between the Hallrich stores without retraining.

29. Defendants share or co-determine those matters governing the essential terms and conditions of employment for Plaintiff and similarly situated delivery drivers at the Hallrich stores.

30. Defendants suffer or permit Plaintiff and other delivery drivers to work.

31. Defendants have direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated delivery drivers.

32. During all relevant times, Defendants also exercised operational control over the delivery drivers at the Hallrich stores, including, but not limited to, control over recruiting and

23

training of delivery drivers, compensation of delivery drivers, job duties of delivery drivers, reimbursements to delivery drivers, recruiting and training managers, design and layout of the restaurants, sales and marketing programs, public relations programs, promotional services, appearance and conduct standards, inventory, and inventory controls.

33. Together, the Defendant entities have earned more than $500,000 in gross sales throughout the relevant time period.

**Hallrich Incorporated**

34. Defendant Hallrich Incorporated is a foreign corporation, incorporated in Kansas, authorized to do business under the laws of Ohio.

35. Hallrich Incorporated's principal place of business is in Ohio.

36. Hallrich Incorporated is owned by A.E. Szambecki

37. Hallrich Incorporated is operated by A.E. Szambecki.

38. Hallrich Incorporated is owned by A. Scott Ritchie.

39. Hallrich Incorporated is operated by A. Scott Ritchie.

40. Hallrich Incorporated is owned by Scott C. Arbuthnot.

41. Hallrich Incorporated is operated by Scott C. Arbuthnot.

42. Hallrich Incorporated has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

43. Hallrich Incorporated has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

44. At all relevant times, Hallrich Incorporated maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

23

45.     Hallrich Incorporated is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Section 34a.

46.     At all relevant times, Hallrich Incorporated has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

47.     Hallrich Incorporated's gross revenue exceeds $500,000 per year.

**North Coast Pizza, Inc.**

48.     Defendant, North Coast Pizza, Inc., is a foreign corporation, incorporated in Kansas, authorized to do business under the laws of Ohio.

49.     North Coast Pizza, Inc., began operations in 2007.

50.     North Coast Pizza, Inc., is owned by A. Scott Ritchie.

51.     North Coast Pizza, Inc., is operated by A. Scott Ritchie.

52.     Upon information and belief, A.E. Szambecki and Scott C. Arbuthnot own and operate North Coast Pizza, Inc.

53.     Upon information and belief, Defendant North Coast Pizza, Inc. operates Pizza Hut stores alongside Defendant Hallrich Incorporated.

54.     North Coast Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

55.     North Coast Pizza, Inc., has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

56.     At all relevant times, North Coast Pizza, Inc., maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

23

57.     North Coast Pizza, Inc., is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Section 34a.

58.     At all relevant times, North Coast Pizza, Inc., has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

59.     North Coast Pizza, Inc.'s, gross revenue exceeds $500,000 per year.

**A.E. Szambecki**

60.     Defendant A.E. Szambecki is an owner of the Hallrich stores and Hallrich Incorporated.

61.     A.E. Szambecki is an operator of the Hallrich stores and Hallrich Incorporated.

62.     A.E. Szambecki has entered into a franchise agreement with Pizza Hut to operate Pizza Hut stores.

63.     A.E. Szambecki and A. Scott Ritchie are the original incorporators on Hallrich Incorporated's articles of incorporation which were filed on October 5, 1986, in the State of Kansas.

64.     A.E. Szambecki has been, during all or part of the relevant time period, the Chief Executive Officer of Hallrich Incorporated.

65.     A.E. Szambecki, during all or part of the relevant time period, has been a Director of Hallrich Incorporated.

66.     A.E. Szambecki is individually liable to the delivery drivers at the Hallrich stores under the definitions of "employer" set forth in the FLSA and Ohio law because he owns and operates the Hallrich stores, serves as a manager and/or member of some or all of the corporate entity Defendants, ultimately controls significant aspects of the Hallrich stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

23

67.     At all or part of the relevant times, by virtue of his role as owner, operator, and CEO of the Hallrich stores, A.E. Szambecki has had financial control over the operations at each of the Hallrich stores.

68.     At all or part of the relevant times, by virtue of his role as owner, operator, and CEO of the Hallrich stores, A.E. Szambecki has a role in significant aspects of the Hallrich stores' day to day operations.

69.     At all or part of the relevant times, by virtue of his role as owner, operator, and CEO of the Hallrich stores, A.E. Szambecki has had control over the Hallrich stores' pay policies.

70.     At all or part of the relevant times, by virtue of his role as owner, operator, and CEO of the Hallrich stores, A.E. Szambecki has had power over personnel and payroll decisions at the Hallrich stores, including but not limited to influence of delivery driver pay.

71.     At all or part of the relevant times, by virtue of his role as owner, operator, and CEO of the Hallrich stores, A.E. Szambecki has had the power to hire, fire and discipline employees, including delivery drivers at the Hallrich stores.

72.     At all or part of the relevant times, by virtue of his role as owner, operator, and CEO of the Hallrich stores, A.E. Szambecki has had the power to stop any illegal pay practices that harmed delivery drivers at the Hallrich stores.

73.     At all or part of the relevant times, by virtue of his role as owner, operator, and CEO of the Hallrich stores, A.E. Szambecki has had the power to transfer the assets and liabilities of Hallrich Incorporated.

74.     At all or part of the relevant times, by virtue of his role as owner, operator and CEO of the Hallrich stores, A.E. Szambecki has had the power to declare bankruptcy on behalf of Hallrich Incorporated.

23

75.     At all or part of the relevant times, by virtue of his role as owner, operator, and CEO of the Hallrich stores, A.E. Szambecki has had the power to enter into contracts on behalf of each of the Hallrich stores.

76.     At all or part of the relevant times, by virtue of his role as owner, operator, and CEO of the Hallrich stores, A.E. Szambecki has had the power to close, shut down, and/or sell each of the Hallrich stores.

77.     At all or part of the relevant times, by virtue of his role as owner, operator, and CEO of the Hallrich stores, A.E. Szambecki had authority over the overall direction of each of Hallrich stores and was ultimately responsible for their operations.

78.     The Hallrich stores function for A.E. Szambecki's profit.

79.     A.E. Szambecki has influence over how the Hallrich stores can run more profitably and efficiently.

**A. Scott Ritchie**

80.     Defendant A. Scott Ritchie is an owner of the Hallrich stores and Hallrich Incorporated.

81.     A. Scott Ritchie is an operator of the Hallrich stores and Hallrich Incorporated.

82.     The Hallrich website, innercrust.com, explains that A. Scott Ritchie and A.E. Szambecki have owned Pizza Hut franchises together since at least 1968.

83.     A. Scott Ritchie has owned Pizza Hutt franchises since at least 1968.

84.     A. Scott Ritchie has entered into franchise agreements with Pizza Hut to operate Pizza Hut stores.

85.     A.E. Szambecki and A. Scott Ritchie are the original incorporators on Hallrich Incorporated's articles of incorporation which were filed on October 5, 1986, in the State of Kansas.

23

86.     A. Scott Ritchie has been, during all or part of the relevant time period, the Treasurer of Hallrich Incorporated.

87.     A. Scott Ritchie has been, during all or part of the relevant time period, a Director of Hallrich Incorporated.

88.     A. Scott Ritchie is an owner and operator of North Coast Pizza, Inc.

89.     A. Scott Ritchie is individually liable to the delivery drivers at the Hallrich stores under the definitions of "employer" set forth in the FLSA and Section 34a because he owns and operates the Hallrich stores, serves as a manager and/or member of some or all of the corporate entity Defendants, ultimately controls significant aspects of the Hallrich stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

90.     At all or part of the relevant times, by virtue of his role as owner and operator of the Hallrich stores, A. Scott Ritchie has had financial control over the operations at each of the Hallrich stores.

91.     At all or part of the relevant times, by virtue of his role as owner and operator of the Hallrich stores, A. Scott Ritchie has a role in significant aspects of the Hallrich stores' day to day operations.

92.     At all or part of the relevant times, by virtue of his role as owner and operator of the Hallrich stores, A. Scott Ritchie has had control over the Hallrich stores' pay policies.

93.     At all or part of the relevant times, by virtue of his role as owner and operator of the Hallrich stores, A. Scott Ritchie has had power over personnel and payroll decisions at the Hallrich stores, including but not limited to influence of delivery driver pay.

94.     At all or part of the relevant times, by virtue of his role as owner and operator of the Hallrich stores, A. Scott Ritchie has had the power to hire, fire and discipline employees, including

23

delivery drivers at the Hallrich stores.

95.     At all or part of the relevant times, by virtue of his role as owner and operator of the Hallrich stores, A. Scott Ritchie has had the power to stop any illegal pay practices that harmed delivery drivers at the Hallrich stores.

96.     At all or part of the relevant times, by virtue of his role as owner and operator of the Hallrich stores, A. Scott Ritchie has had the power to transfer the assets and liabilities of Hallrich Incorporated.

97.     At all or part of the relevant times, by virtue of his role as owner and operator of the Hallrich stores, A. Scott Ritchie has had the power to declare bankruptcy on behalf of Hallrich Incorporated.

98.     At all or part of the relevant times, by virtue of his role as owner and operator of the Hallrich stores, A. Scott Ritchie has had the power to enter into contracts on behalf of each of the Hallrich stores.

99.     At all or part of the relevant times, by virtue of his role as owner and operator of the Hallrich stores, A. Scott Ritchie has had the power to close, shut down, and/or sell each of the Hallrich stores.

100.    At all or part of the relevant times, by virtue of his role as owner and operator of the Hallrich stores, A. Scott Ritchie had authority over the overall direction of each of Hallrich stores and was ultimately responsible for their operations.

101.    The Hallrich stores function for A. Scott Ritchie's profit.

102.    A. Scott Ritchie has influence over how the Hallrich stores can run more profitably.

**Scott C. Arbuthnot**

103.    Defendant Scott C. Arbuthnot has been, during all or part of the relevant time period,

an owner of the Hallrich stores and Hallrich Incorporated.

104.     Scott C. Arbuthnot has been, during all or part of the relevant time period, an operator of the Hallrich stores and Hallrich Incorporated.

105.     The Hallrich website, innercrust.com, explains that Arbuthnot is the President and CEO of Hallrich Incorporated.

106.     Scott C. Arbuthnot has been, during all or part of the relevant time period, the CEO of Hallrich Incorporated.

107.     Scott C. Arbuthnot has been, during all or part of the relevant time period, the President of Hallrich Incorporated.

108.     Scott C. Arbuthnot has been, during all or part of the relevant time period, the CFO of Hallrich Incorporated.

109.     A. Scott C. Arbuthnot is individually liable to the delivery drivers at the Hallrich stores under the definitions of "employer" set forth in the FLSA and Section 34a because he owns and operates the Hallrich stores, serves as a manager and/or member of some or all of the corporate entity Defendants, ultimately controls significant aspects of the Hallrich stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

110.     At all or part of the relevant times, by virtue of his role as owner, operator, and CEO of the Hallrich stores, Scott C. Arbuthnot has had financial control over the operations at each of the Hallrich stores.

111.     At all or part of the relevant times, by virtue of his role as owner, operator, and CEO of the Hallrich stores, Scott C. Arbuthnot has a role in significant aspects of the Hallrich stores' day to day operations.

112.     At all or part of the relevant times, by virtue of his role as owner and CEO of Hallrich,

Scott C. Arbuthnot has had control over the Hallrich stores' pay policies.

113.    At all or part of the relevant times, by virtue of his role owner, operator, and CEO of the Hallrich stores, Scott C. Arbuthnot has had power over personnel and payroll decisions at the Hallrich stores, including but not limited to influence of delivery driver pay.

114.    At all or part of the relevant times, by virtue of his role as owner, operator, and CEO of the Hallrich stores, Scott C. Arbuthnot has had the power to hire, fire and discipline employees, including delivery drivers at the Hallrich stores.

115.    At all or part of the relevant times, by virtue of his role as owner, operator, and CEO of the Hallrich stores, Scott C. Arbuthnot has had the power to stop any illegal pay practices that harmed delivery drivers at the Hallrich stores.

116.    At all or part of the relevant times, by virtue of his role as owner, operator, and CEO of the Hallrich stores, Scott C. Arbuthnot has had the power to transfer the assets and liabilities of Hallrich Incorporated.

117.    At all or part of the relevant times, by virtue of his role as owner, operator, and CEO of the Hallrich stores, Scott C. Arbuthnot has had the power to declare bankruptcy on behalf of Hallrich Incorporated.

118.    At all or part of the relevant times, by virtue of his role as owner and CEO, Scott C. Arbuthnot has had the power to enter into contracts on behalf of each of the Hallrich stores.

119.    At all or part of the relevant times, by virtue of his role as owner, operator, and CEO of the Hallrich stores, Scott C. Arbuthnot has had the power to close, shut down, and/or sell each of the Hallrich stores.

120.    At all or part of the relevant times, by virtue of his role as owner, operator, and CEO of the Hallrich stores, Scott C. Arbuthnot had authority over the overall direction of each of Hallrich

stores and was ultimately responsible for their operations.

121.     The Hallrich stores function for Scott C. Arbuthnot's profit.

122.     Scott C. Arbuthnot has influence over how the Hallrich stores can run more profitably

## Facts

### Class-wide Factual Allegations

123.     During all relevant times, Defendants have operated the Hallrich stores.

124.     The primary function of the Hallrich stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

125.     Some or all of the Hallrich stores employ delivery drivers.

126.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers employed by Defendants at the Hallrich stores.

127.     All delivery drivers employed at the Hallrich stores over the last six years have had essentially the same job duties—deliver pizza and other food items to customers.

128.     Drivers at the Hallrich stores work dual jobs: one job in which they are on the road making deliveries, and one job in which they are working inside the store helping with various tasks, such as building pizza boxes, cleaning, and preparing pizza and other food items.

129.     At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they worked while completing deliveries.

130.     At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage or slightly above minimum wage for the hours they worked inside the restaurant.

131.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

23

132. Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

133. Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing charges, and incur cell phone and data charges all for the primary benefit of Defendants.

134. The Hallrich stores do not track or record their delivery drivers' actual expenses.

135. The Hallrich stores do not reimburse delivery drivers for their actual expenses.

136. Defendants' Hallrich stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries

137. Defendants do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

138. Defendants do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers worked for Defendants.

139. Defendants do not inquire into the time it take delivery drivers to maintain their vehicles.

140. Defendants do not inquire into the delivery drivers' storage costs.

141. Defendants do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

142. Defendants do not collect receipts of delivery drivers' automobile registration costs.

143. Defendants do not collect receipts of delivery drivers' automobile financing or

23

purchase costs.

144.     Defendants do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at Defendants' Hallrich stores.

145.     Defendants do not reimburse delivery drivers at the IRS standard business mileage rate.

146.     Defendants do not reimburse delivery drivers at a reasonable approximation of the delivery drivers' expenses.

147.     Plaintiff and similarly situated delivery drivers receive a per-mile reimbursement payment that is less than the IRS standard business mileage rate for each mile they drive while completing deliveries for the Hallrich stores.

148.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.          2016: 54 cents/mile
    b.          2017: 53.5 cents/mile
    c.          2018: 54.5 cents/mile
    d.          2019: 58 cents/mile
    e.          2020: 57.5 cents/mile
    f.          2021: 56 cents/mile

149.     The delivery drivers at the Hallrich stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

150.     The delivery drivers at Defendants' Hallrich stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

151.     Defendants reimbursed their delivery drivers amounts less than they would have had to pay if they rented vehicles each day to use to make deliveries.

23

152. Defendants reimbursed their delivery drivers amounts less than they would have had to pay to own and maintain a fleet of vehicles to complete their deliveries.

153. Defendants benefit from the delivery drivers spending time off the clock repairing and maintaining their vehicles.

154. Defendants benefit from delivery drivers taking on the risk of using their vehicles to drive for Defendants' business.

155. Defendants save substantial insurance costs and exposure to liability by requiring their judgment proof minimum wage workers to take on the risk of accident or injury for them.

156. Because delivery drivers provided their cars to use to make deliveries, Defendants saved substantial business costs, including but not limited to commercial insurance on a fleet of automobiles, the risk and exposure associated with operating a company-owned fleet of automobiles, the time it takes to repair and maintain a fleet of automobiles, the time it takes to record vehicle-related expenses, the expertise required to evaluate whether vehicles are fit to be driven for business purposes, etc.

157. As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Ohio law.

158. At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Hallrich stores.

159. All of Defendants' delivery drivers had similar experiences to that of Plaintiff. They completed similar job duties, were subject to the same reimbursement policy; received similar reimbursement payments; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate or a

23

tipped wage rate before deducting unreimbursed vehicle costs.

160.    Regardless of the precise amount of the reimbursement formula at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

161.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

162.    Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of the Hallrich stores.

163.    Defendants have failed to properly take a tip credit from Plaintiffs' wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

164.    Defendants have willfully failed to pay federal and Ohio state minimum wage to Plaintiff and similarly situated delivery drivers at the Hallrich stores.

165.    Defendants' policy of under-reimbursement unjustly enriches them at the expense of their delivery drivers. Under-reimbursing delivery drivers allows Defendants to shift business expenses onto their employees, which confers various benefits on Defendants beyond the direct savings from violating the law. Those benefits include: comparative advantage in business, avoiding the expense of maintaining and storing a fleet of vehicles, and freeing up additional capital for investment.

23

166.    All of Defendants' delivery drivers conferred a benefit on Defendants by providing vehicles to deliver pizza and other food items for Defendants.

167.    Defendants were aware of the benefits conferred upon them by their delivery drivers. Since their drivers provided the vehicles necessary for delivering pizza and other food items, Defendants did not have to purchase and maintain a fleet of delivery vehicles to operate their pizza delivery business.

168.    It would be unjust for Defendants to retain the benefit conferred upon them by their delivery drivers in the form of business expenses saved by Defendant not having to purchase and maintain a fleet of delivery vehicles.

### Plaintiff's Individual Factual Allegations

169.    Plaintiff worked for Defendants as a pizza delivery driver at the Hallrich stores from approximately March 2021 until September 2021 at their Fairborn, Ohio location.

170.    Plaintiff worked dual jobs—one inside the store, and one outside the store.

171.    Plaintiff was paid minimum wage minus a tip credit as an hourly rate for all hours worked while delivering food.

172.    Plaintiff earned under $5 per hour while out on deliveries.

173.    Plaintiff delivered pizza and other food items to Defendants' customers' homes and businesses.

174.    When she was not making deliveries, Plaintiff worked inside the restaurant, completing tasks such as taking orders, preparing vegetables, sweeping, mopping, and/or doing other tasks necessary for the operation of the restaurant.

175.    Plaintiff was paid minimum wage or slightly above minimum wage for the hours she worked inside the restaurant. For example, during some portion of her employment, she was paid

23

$8.95 per hour for her inside hours.

176.     Plaintiff was reimbursed on a per mile basis for each mile she drove while completing deliveries for Defendants.

177.     Plaintiff received $.28 per mile while she completed deliveries for Defendants.

178.     Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

179.     Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, and other equipment necessary for delivery drivers to complete their job duties.

180.     Plaintiff purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, and incur cell phone and data charges all for the primary benefit of Defendants.

181.     Defendants did not track the actual expenses incurred by Plaintiff.

182.     Defendants did not ask Plaintiff to provide receipts of the expenses she incurred while delivering pizzas for Defendants.

183.     Defendants' Hallrich stores did not collect receipts from Plaintiff related to the expenses she incurred while completing deliveries.

184.     Defendants did not collect receipts of Plaintiff's gasoline purchases during weeks when she worked for Defendants

185.     Defendants did not collect receipts of Plaintiff's automobile maintenance, repair, and parts purchased or paid for during weeks when she worked for Defendants.

186.     Defendants did not collect receipts of Plaintiff's monthly or annual automobile

insurance costs.

187.    Defendants did not collect receipts of Plaintiff's automobile registration costs.

188.    Defendants did not collect receipts of Plaintiff's automobile financing or purchase costs.

189.    Defendants did not collect any other receipts from Plaintiff related to the automobile expenses she incurred as a delivery driver at Defendants' Hallrich stores.

190.    Defendants did not reimburse Plaintiff based on her actual delivery-related expenses.

191.    Plaintiff was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

192.    During Plaintiff's employment with Defendants, Defendants failed to adequately reimburse Plaintiff for automobile and other job-related expenses.

193.    Plaintiff regularly made approximately 2 to 4 deliveries per hour during the hours she worked as a delivery driver.

194.    Plaintiff regularly drove between 5-7 miles round trip per delivery.

195.    In 2021, for example, the IRS business mileage reimbursement is $.56 per mile. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. As such, every mile driven on the job decreased her net wages by approximately $.28 ($.56 - $.28) per mile. Considering Plaintiff's estimate of about 6 average miles per delivery, Defendants under-reimbursed her about $1.68 per delivery ($.28 x 6 average miles).

196.    Thus, while making deliveries, Plaintiff consistently "kicked back" to Defendants approximately $5.04 per hour ($1.68 per delivery x 3 deliveries per hour).

197.    Defendants failed to properly take a tip credit from Plaintiffs' wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed

Plaintiff they would be taking.

198.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by law.

199.    Defendants have been unjustly enriched by Plaintiff in that she used her vehicle and incurred vehicle-related expenses for Defendants' benefit.

### Collective Action Allegations

200.    Plaintiff brings the First Count on behalf of herself and all similarly situated current and former delivery drivers employed at the Hallrich stores owned, operated, and controlled by Defendants nationwide, during the six years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

201.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

202.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

203.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

204.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

205.    The First Count are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

206.    In recognition of the services Plaintiff has rendered and will continue to render to the

23

FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## Class Action Allegations

207.     Plaintiff brings the Second, Third, and Fourth Counts under Federal Rule of Civil

Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendant at Hallrich stores in
> the State of Ohio between the date three years prior to the filing of the original
> complaint and the date of final judgment in this matter ("Rule 23 Ohio Wage Class").

208.     Plaintiff brings Fifth Count under Federal Rule of Civil procedure 23, on behalf of

herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendant at Hallrich stores in
> the State of Ohio between the date six years prior to the filing of the original complaint
> and the date of final judgment in this matter ("Rule 23 Unjust Enrichment Class").

209.     Excluded from the Rule 23 Ohio Wage Class and Rule 23 Unjust Enrichment Class

are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual

who has, or who at any time during the class period has had, a controlling interest in Defendants; the

Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons

who will submit timely and otherwise proper requests for exclusion from the Rule 23 Ohio Wage Class

and/or Rule 23 Unjust Enrichment Class.

210.     The number and identity of the Rule 23 Ohio Wage Class members and Rule 23

Unjust Enrichment Class members are ascertainable from Defendants' records.

211.     The hours assigned and worked, the positions held, deliveries completed, and the

rates of pay and reimbursements paid for each Rule 23 Ohio Wage Class member are determinable

from Defendants' records.

212.     The benefits conferred by the Rule 23 Unjust Enrichment Class members and

realized by Defendants are determinable from Defendants' records.

213.     For the purpose of notice and other purposes related to this action, the class members' names and contact information are readily available from Defendants.

214.     Notice can be provided by means permissible under Rule 23 for the Rule 23 Ohio Wage Class members and the Rule 23 Unjust Enrichment Class members.

215.     The Rule 23 Ohio Wage Class members and Rule 23 Unjust Enrichment Class members are so numerous that joinder of all members is impracticable.

216.     The disposition of the Rule 23 Class members and Rule 23 Unjust Enrichment Class members claims as a class will benefit the parties and the Court.

217.     There are more than 50 Rule 23 Ohio Wage Class members

218.     There are more than 50 Rule 23 Unjust Enrichment Class members.

219.     Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member in either the Ohio Wage Class or the Rule 23 Unjust Enrichment Class, and the relief sought is typical of the relief which would be sought by each Rule 23 Ohio Wage Class or Rule 23 Unjust Enrichment Class member in separate actions.

220.     Plaintiff and the Rule 23 Ohio Wage Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Section 34a and O.R.C. § 4113.15.

221.     Plaintiff and the Rule 23 Unjust Enrichment Class members have also unjustly enriched Defendants in the same way—by providing automobiles for use in their business at no cost to Defendants.

222.     Plaintiff and the Rule 23 Ohio Wage Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

223.     Plaintiff and the Rule 23 Unjust Enrichment Class sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures

23

224. By seeking to represent the interests of the Rule 23 Ohio Wage Class members and Rule 23 Unjust Enrichment Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of herself and his co-workers.

225. Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Ohio Wage Class and Rule 23 Unjust Enrichment Class and has no interests antagonistic to the Rule 23 Ohio Wage Class.

226. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

227. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

228. Upon information and belief, Defendants and other employers throughout the state violate Section 34a and O.R.C. § 4113.15. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

229. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

230. The Rule 23 Ohio Wage Class and the Rule 23 Unjust Enrichment Class are properly treated as subclasses pursuant to Rule 23(c)(5).

231. Common questions of law and fact exist as to the Rule 23 Ohio Wage Class that predominate over any questions only affecting Plaintiff and the Rule 23 Ohio Wage Class members individually and include, but are not limited to:

    a. Whether Plaintiff and the Rule 23 Ohio Wage Class members were subject to a common expense reimbursement policy;

    b. Whether Plaintiff and the Rule 23 Ohio Wage Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

    c. Whether Plaintiff and the Rule 23 Ohio Wage Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    d. Whether Defendants collected and maintained records of Plaintiff and the Rule 23 Ohio Wage Class members' actual vehicle expenses;

    e. Whether Defendants reimbursed Plaintiff and the Rule 23 Ohio Wage Class members for their actual expenses;

    f. Whether Defendants reimbursed Plaintiff and the Rule 23 Ohio Wage Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

    g. Whether Defendants reimbursed Plaintiff and the Rule 23 Ohio Wage Class members based on a reasonable approximation of the expenses they incurred;

    h. Whether Defendants properly reimbursed Plaintiff and the Rule 23 Ohio Wage Class members;

    i. Whether Defendants failed to pay Plaintiff and the Rule 23 Ohio Wage Class in a timely manner as described by O.R.C. § 4113.15, and, if so, whether the wages owed are "in dispute"; and

    j. The nature and extent of class-wide injury and the measure of damages for those injuries.

232. Common questions of law and fact exist as to the Rule 23 Unjust Enrichment Class

23

that predominate over any questions only affecting Plaintiff and the Rule 23 Unjust Enrichment Class members individually and include, but are not limited to:

    a.   Whether Plaintiff and the Rule 23 Unjust Enrichment Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

    b.   Whether Plaintiff and the Rule 23 Unjust Enrichment Class members were subject to a common automobile expense reimbursement policy;

    c.   Whether Plaintiff and the Rule 23 Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    d.   Whether Defendants avoided business expenses they would have otherwise been required to cover but for Plaintiff and the Rule 23 Unjust Enrichment Class providing cars to use to make deliveries;

    e.   How much it would have cost Defendants to operate their business but for Plaintiff and the Rule 23 Unjust Enrichment Class providing cars to use to make deliveries;

    f.   Whether Plaintiff and the Rule 23 Unjust Enrichment Class conferred a benefit on Defendants that Defendants were aware of;

    g.   Whether Defendants accepted the benefits conferred on them by Plaintiff and the Rule 23 Unjust Enrichment Class;

    h.   Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiff and the Rule 23 Unjust Enrichment Class without compensating for it;

    i.   The nature and extent of class-wide injury and the measure of damages for those injuries.

233.    In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Ohio Wage Class and the Rule 23 Unjust Enrichment Class, Plaintiff will request payment of a service award upon resolution of this action.

**Causes of Action**

**Count 1**
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

234.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

235.     Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

236.     Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

237.     Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

238.     Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

239.     By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

240.     Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

241.     As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiff and the Rule 23 Ohio Wage Class)**

242.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten

23

herein.

243.    Defendants paid Plaintiff and the Rule 23 Ohio Wage Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

244.    Defendants ostensibly paid Plaintiff and the Rule 23 Ohio Wage Class at or close to minimum wage for the hours they worked.

245.    Because Defendants required Plaintiff and the Rule 23 Ohio Wage Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Rule 23 Ohio Wage Class minimum wage.

246.    By not paying Plaintiff and the Rule 23 Ohio Wage Class at least minimum wage for each hour worked, Defendants has violated the Ohio Constitution, Article II, § 34a.

247.    As a result of Defendants' violations, Plaintiff and the Rule 23 Ohio Wage Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional two times unpaid wages/unreimbursed expenses in damages under Section 34a, costs, and attorneys' fees.

**Count 3**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of Plaintiff and the Rule 23 Ohio Wage Class)**

248.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

249.    During all relevant times, Defendants were covered by O.R.C. § 4113.15, and Plaintiff and the Rule 23 Ohio Wage Class were employees within the meaning of O.R.C. § 4113.15

and were not exempt from its protections.

250.    O.R.C. § 4113.15(A) requires that Defendants pay Plaintiff and the Rule 23 Ohio

Wage Class all wages on or before the first day of each month, for wages earned during the first

half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth

day of each month, for wages earned during the last half of the preceding calendar month.

251.    By failing to pay Plaintiff and the Rule 23 Ohio Wage Class all wages due to them

under the FLSA and Ohio Constitution, Defendants have also violated the Ohio Prompt Pay Act.

252.    Plaintiff and the Rule 23 Ohio Wage Class's unpaid wages and unreimbursed

expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled

payday.

253.    In violating Ohio law, Defendants acted willfully, without a good faith basis and with

reckless disregard to Ohio law.

254.    As a result of Defendants' willful violation, Plaintiff and the Rule 23 Ohio Wage

Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**Count 4**
**Damages Pursuant to O.R.C. § 2307.60**
**(On Behalf of Plaintiff and the Rule 23 Ohio Wage Class)**

255.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten

herein.

256.    The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for

willful violations of the FLSA.

257.    By their acts and omissions described herein, Defendants have willfully violated the

FLSA, and Plaintiff and the Rule 23 Ohio Wage Class have been injured as a result.

23

258. O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

259. As a result of Defendants' willful violations of the FLSA, Plaintiff and the Rule 23 Ohio Wage Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**Count 5**
**Unjust Enrichment**
**(On Behalf of Plaintiff and Rule 23 Unjust Enrichment Class)**

260. The Rule 23 Unjust Enrichment Class members at the Hallrich stores have conferred a benefit on Defendants by using their own cars to perform work for Defendants.

261. Defendants are aware of and have accepted the benefit conferred on them by Rule 23 Unjust Enrichment Class members.

262. It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Rule 23 Unjust Enrichment Class members without commensurate compensation.

263. Plaintiff and the Rule 23 Unjust Enrichment Class members are entitled to equitable restitution of the benefits they have conferred on Defendants within the 6 years preceding the filing of this complaint.

**WHEREFORE**, Plaintiff Courtney Dimidik prays for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B. Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of

Civil Procedure.

D.      Designation of Plaintiff as representative of the Rule 23 Ohio Wage Class and Rule 23

Unjust Enrichment Class, and counsel of record as Class Counsel for both Classes.

E.      A declaratory judgment that the practices complained of herein are unlawful under

Section 34a and O.R.C. § 4113.15.

F.      An award of unpaid minimum wages and unreimbursed expenses due under Section

34a.

G.      An award of damages under Section 34a, based on Defendants' failure to pay

minimum wages, calculated as an additional two times of back wages.

H.      Liquidated damages under O.R.C. § 4113.15.

I.      Compensatory and punitive damages under O.R.C. § 2307.60.

J.      An award of restitution as a result of unjust enrichment.

K.      An award of prejudgment and post-judgment interest.

L.      An award of costs and expenses of this action, together with reasonable attorneys'

fees and expert fees.

M.      Such other legal and equitable relief as the Court deems appropriate.


                          Respectfully submitted,



                          /s/ *Andrew Kimble*
                          Andrew Biller
                          Andrew Kimble
                          Biller & Kimble, LLC
                          3825 Edwards Road, Suite 650
                          513-202-0710 (Phone)
                          614-340-4620 (Fax)

(*abiller@billerkimble.com*)
(*akimble@billerkimble.com*)
www.billerkimble.com

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ *Andrew Kimble*
Andrew Kimble